UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EDDIER DAVID TABORDA
LOERO,

                Petitioner,

                v.

JAMES JANECKA, et al.,

                Respondents.

Case No. 5:26-cv-03713-DTB

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEEDINGS**

On July 3, 2026, petitioner Eddier David Taborda Loero ("Petitioner"), represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1). The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates 8 U.S.C. § 1226(a); (2) Petitioner's detention violates the Administrative Procedure Act ("APA"); and (3) Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Petition at 18-21).

/ / /

1

On July 13, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 6), Respondents filed an Answer to the Petition ("Answer"). In the Answer, Respondents state: "Respondents are not presenting an opposition argument at this time. Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter." (Docket No. 9).

On July 13, 2026, Petitioner filed a Reply. (Docket No. 10).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[1]

Petitioner is a native and citizen of Colombia who was born on August 3, 2000. (Petition at ¶ 53). On December 18, 2022, Petitioner fled Colombia and entered the United States near El Paso, Texas, together with his partner and their 3 month old daughter. (Id.). Petitioner and his family were encountered by immigration authorities approximately one mile west of the Paso Del Norte port of entry. (Id.; Petition, Exhibit ["Exh."] B).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] The Background is based primarily on the allegations in the Petition. The Answer does not contain any additional allegations, nor does it rebut or refute any of the allegations raised in the Petition.

2

On December 21, 2022, the Department of Homeland Security ("DHS") thereafter released Petitioner into the United States on humanitarian parole pursuant to the Immigration and Nationality Act ("INA") § 212(d)(5) and 8 U.S.C. § 1182(d)(5). (Petitioner at ¶ 54). Petitioner settled in Southern California, and lives in Garden Grove, California, with his partner and their daughter.[2] (Id.).

On December 5, 2023, Petitioner filed an application for asylum and withholding of removal with USCIS, detailing his fear of persecution in Colombia, which remains pending. (Petition at ¶ 56; Petition Exh. C).

Petitioner has been previously granted employment authorization by the government and is the principal provider for his partner and daughter, and has been steadily employed at True Fresh HPP, a food-processing company in Buena Park, California, where he has served as a production leader since March 2025, filing federal and state income taxes. (Id. at ¶ 58). Petitioner also holds a California driver's license which was issued on March 26, 2025. (Petition at ¶ 58; Petition Exh. E).

While waiting for USCIS to schedule an asylum interview, Petitioner has reported for check-in appointments with Immigration and Customs Enforcement ("ICE") approximately every two months, as directed, including a scheduled appointment at the ICE Los Angeles Field Office on January 6, 2026. (Petition at ¶ 59; Petition Exh. D). Petitioner has never violated any of the terms of his parole. (Petition at ¶¶ 3, 59).

On November 13, 2025, Petitioner paid the $100.00 annual asylum fee. (Petition at ¶ 60; Petition Exh. C).

/ / /

---

[2]   Petitioner's partner is also a native and citizen of Columbia with her own pending application for asylum. (Petition at ¶ 55). Their daughter, who is also a native and citizen of Columbia is included as a derivative on her mother's application. (Id.).

On June 16, 2026, Petitioner appeared, as directed, for his regularly scheduled bimonthly check-in appointment with ICE where he was detained and advised that he was being detained because the government had changed its policy. (Petition at ¶ 61). Petitioner was not provided with any prior notice that DHS was revoking his release, any statement of reasons, or any opportunity to contest whether his re-detention was warranted before a neutral decisionmaker. (Id.)

Also on June 16, 2026, DHS served Petitioner with a Notice to Appear ("NTA"), charging him with inadmissibility under INA § 212(a)(6)(A)(i), 8 U,S,C. § 11 82(a)(6)(A)(i) (present without admission or parole), and INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) (no valid entry document). (Petition at ¶ 63; Petition Exh. G). The NTA alleges that Petitioner entered the United States at or near the Paso Del Norte, Texas bridge on or about December 18, 2022, and that he was "not then admitted or paroled after inspection by an Immigration Officer." (Id.). Petitioner alleges that allegation is contradicted by DHS's own records: DHS itself paroled Petitioner into the United States on December 21, 2022, pursuant to INA§ 212(d)(5), as the "PAROLED" stamp DHS affixed to Petitioner's Form 1-94 attests. (Petition, Exh. A). Notably, the Form I-831 Continuation Page setting forth the NTA's charges is dated May 26, 2026, three weeks before Petitioner's arrest, demonstrating that DHS prepared the charging documents in advance of Petitioner's scheduled check-in and that no individualized assessment of danger, flight risk, or changed circumstances preceded his re-detention. (Id., Exh. G). The NTA was filed with EOIR on June 17, 2026, and Petitioner's case was docketed at the Adelanto Immigration Court on June 18, 2026. (Petition at ¶ 63). The Adelanto Immigration Court has scheduled a detained, in-person master calendar hearing before Immigration Judge Patrick D. Barrett for August 13, 2026. (Petition at ¶ 63; Petition Exh. F).

Petitioner has no criminal history, no prior orders of removal, and no pending criminal proceedings. (Petition at ¶ 66).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (See https://ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due

process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").  Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A.    Habeas Relief is Warranted.

The third claim in the Petition allege that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Docket No. 1 at 19-21).

Given Respondents' election not to oppose the merits of the claims alleged in the Petition, the Court finds that Respondents have consented to the facts and arguments raised therein pursuant to Central District of California Local Civil Rule 7-12. Accordingly, the Court considers the facts and contentions alleged by Petitioner to be unopposed.[3]

Petitioner alleges that he entered the United States on or about December 18, 2022, that he was taken into custody the same day and was released on humanitarian parole on December 21, 2022. Pursuant to the conditions of his release, Petitioner was required to periodically report to ICE. He was also granted employment authorization. Petitioner alleges that he has complied with the conditions of his release and does not have any criminal history. Notwithstanding his compliance with the conditions of his release from custody, Petitioner alleges that on June 16,

---

[3]    Respondents' non-opposition, in itself, can serve as a basis to grant the Petition. See Orozco v. Warden, Adelanto Detention Facility, et al., Case No. 5:26-cv-02385-BFM, 2026 WL 1390443, at *1 (C.D. Cal. May 14, 2026) (citing cases).

2026, he was re-detained by Respondents without notice, without a hearing, and without any opportunity to contest the basis for his detention.  (Petition at ¶¶ 53-68).

       1.     Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original).  As noted above, in Mathews, 424 U.S. at 335, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally  sufficient  to  protect  a  liberty interest.

Thus, the Court considers the Mathews factors as applied to Petitioner's claim.

       a.     Private Interest

The facts alleged in the Petition are undisputed.  As such, the Court finds that Petitioner has developed a substantial liberty interest in remaining out of custody after being evaluated and released by Respondents, based on the life he has built in the United States since arriving more than three years ago.  Petitioner has been a

productive member of society, engaging in lawful employment to support himself, his partner, and their daughter, all while complying with the conditions of his release. See, e.g., Tinoco v. Noem, 818 F. Supp. 3d 1141, 1152 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that the petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); López, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom."); Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

b.      Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when they released him on humanitarian parole; otherwise, the government would not have done so. Cf. e.g., Padilla v. Bowen, Case No. 2:25-cv-10780-CAS-SK, 2025 WL 3251368, at *7 (C.D. Cal. Nov. 21, 2025); Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). There is no evidence indicating that the decision to release Petitioner was erroneous, nor is there any evidence that Petitioner violated any terms of his supervision. Therefore, without a pre-deprivation hearing, there exists a significant risk of erroneous deprivation of Petitioner's liberty interest. See Fernandez v. Semaia, Case No. 5:25-cv-03412-SPG-MBK, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) ("[T]he risk of erroneous deprivation is high because [the petitioner] has been afforded no process and there is no evidence of any changed circumstances that would justify his re-detention.").

c.      Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, Respondents have not made any argument, let alone a compelling argument, as to why Petitioner should be detained without a pre-detention hearing. Respondents did not deem

10

Petitioner to pose either a risk of flight or a danger when they released him on humanitarian parole in 2022. Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted).

Therefore, there is a great risk that the lack of a pre-detention process has resulted in Petitioner's unnecessary detention. See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); López, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.").

Accordingly, the Court concludes that the government's June 16, 2026 re-detention of Petitioner, who has developed a significant liberty interest during his more than three years in the United States, without first providing him with notice and opportunity for a hearing before a neutral adjudicator, violated his right to procedural due process under the Fifth Amendment. [4]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Eddier David Taborda Loero (A# 246-410-480) from

---

[4] The Court's determination that Petitioner is entitled to habeas relief on the this claim in the Petition renders it unnecessary for the Court to address the merits of the other claims alleged in the Petition.

custody, subject to the same conditions (if any) that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: July 15, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

12